**Irene WERNICK, Plaintiff–Appellant,**

v.

**FEDERAL RESERVE BANK OF NEW YORK, Defendant–Appellee.**

**No. 1405, Docket 95–9049.**

United States Court of Appeals, Second Circuit.

Argued April 24, 1996.

Decided Aug. 6, 1996.

Jeffrey M. Bernbach, New York City, for Plaintiff–Appellant.

Martin C. Grant, Federal Reserve Bank of New York, New York City (Thomas C. Baxter, Jr., General Counsel, Michael T. Fois, James J. Hilton, Federal Reserve Bank of New York, New York City, of counsel), for Defendant–Appellee.

Before VAN GRAAFEILAND, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Irene Wernick appeals from a final judgment granting the motion for summary judgment filed by Defendant Federal Reserve Bank of New York ("the Fed") and dismissing Wernick's claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*, the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and the Human Rights Law of New York, N.Y.Exec.Law § 296(1)(a), before the United States District Court for the Southern District of New York (Kevin T. Duffy, *District Judge* ). On appeal, Wernick claims that the district court erred: (1) in finding that, as a matter of law, Wernick was not disabled when she was terminated from her employment by the Fed; (2) in failing to find that the Fed unlawfully refused to reasonably accommodate Wernick's disability; and (3) in dismissing Wernick's pendent New York state law claim.[1]

The judgment of the district court is affirmed.

## BACKGROUND

In May 1990, a decade after Wernick began her employment as a manager with the Fed, she suffered a back injury wholly unrelated to the performance of her duties. Wernick claims that this injury rendered her disabled and led the Fed to discriminate against her.

Between May and September 1990, Wernick was on medical leave intermittently for a total of three weeks, for which she received full pay. From September 1990 until February 1991, she was placed on a part-time work schedule, again at full pay.

In February 1991, Wernick returned to work full-time, but in July 1992, she again requested, and was granted, medical leave so that she could undergo physical therapy for her back because her condition had flared up. Prior to being placed on leave for the second time, Wernick expressed dissatisfaction with the working relationship she had with her supervisor, Richard Passadin. Five months earlier, in February 1992, Passadin had received counseling from the Fed in an effort to improve his working relationship with Wernick.

On August 13, 1992, Dr. Howard Glazer, Wernick's psychologist, wrote a letter to the Fed recommending that Wernick return to work but that she be assigned to a position that did not involve extensive typing or data entry and that did not require her to work under the same supervisor. Soon thereafter, the Fed's staff physician, Dr. Gerald L. Stagg, having received Dr. Glazer's letter, made the following recommendations to the Fed with respect to accommodating Wernick: provide her with appropriate ergonomic furniture, allow her the flexibility to get up and move around periodically, and have management discuss with Passadin the interpersonal relationship issues raised by Wernick with a view toward eliminating any problems between the two.

Starting in February 1992 and continuing throughout that year, the Fed's personnel department sought to locate a suitable job transfer for Wernick. She was considered for approximately thirty positions, but none was suitable. The Fed also considered whether to change Wernick's reporting relationship so that she would not have to report

---

1. The district court dismissed Wernick's state law claim because, having ruled against her on her federal law claims, it declined to continue to exercise its pendent subject matter jurisdiction. The district court did not address the merits of the state law claim.

to Passadin, but decided that such a change would create an undue administrative burden.

In a letter dated December 31, 1992, Dr. Theodore Fields, Wernick's physician, advised that Wernick, who had been on medical leave since July, could return to work if the Fed made the following accommodations: (1) not require her to sit for prolonged periods without providing her sufficient opportunity to move around and stretch; (2) provide her with the use of ergonomic furniture; and (3) assign her to a work environment having considerably less stress than her current position. With respect to the last accommodation, Dr. Fields referenced Dr. Glazer's August 13, 1992 letter.

On January 6, 1993, Robert C. Scrivani, an assistant vice president in the Fed's personnel department, met with Wernick to discuss her return to work. At the meeting, Wernick reported that her back condition had improved and that she was ready and able to return to work but that she could not return to her current position because the stress caused by Passadin would aggravate her back condition. In a letter dated January 27, 1993, Scrivani offered Wernick two options: (1) to return to work in her current position (under her current supervisor), receive reasonable accommodations for her back, and continue to receive assistance in finding a position elsewhere at the Fed; or (2) to resign from the Fed, receive assistance from the Fed in finding employment elsewhere, and receive an outplacement assistance package, which would consist of twenty-six weeks of severance pay and continuation of medical benefits for six months. The letter made clear that if Wernick did not choose either option, her decision would be interpreted as a decision to resign and she would not receive a separation package.

A few days later, Wernick renewed her request for a different job placement and stated that the proposed severance package was inadequate. When she failed to return to her job or to accept the proposed severance package, she was discharged. Throughout the period that Wernick was on medical leave, she received her full salary of $65,800 per year.

## DISCUSSION

### I. Summary Judgment Standard

 A district court properly may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment,

> [a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fairminded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir.1996); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

 When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### II. Wernick's Condition

The first question for resolution is whether the district court correctly determined that, when she was discharged, Wernick was not disabled within the meaning of the Rehabilitation Act and the ADA ("the disability acts").

A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a prima facie case. *Heilweil,* 32 F.3d at 722. In order to satisfy this burden, the plaintiff must show: (1) that she is a handicapped person under the disability acts; (2) that she is otherwise qualified to perform her job; (3) that she was discharged because of her handicap; and, with respect to Rehabilitation Act claims; (4) that the employer is a recipient of Federal financial assistance. *Id.; see also Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 135 (2d Cir. 1995). In order to demonstrate that she is handicapped, she must prove two elements: (1) that she has a physical or mental impairment; and (2) that such impairment substantially limits one or more of her major life activities. *Heilweil,* 32 F.3d at 722.

The Fed concedes that, at the time of her discharge, Wernick had a physical impairment, but argues that this impairment did not substantially limit any of her major life activities. The regulations define major life activities as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii) (Rehabilitation Act); *see* 29 C.F.R. § 1630.2(h)(2)(i) (ADA). Wernick did not allege specifically which major life activities were affected by her impairment. However, because the pleadings indicate concern over her ability to work, the district court reasonably and properly concluded that the function at issue in this case was Wernick's ability to work.

Because the record is incomplete, we are unable to determine whether Wernick's impairment rises to the level of a disability. The record evidence is scant as to whether Wernick would have required ergonomic furniture and the opportunity to move around and stretch periodically in order to be able to perform any job at the Fed (or elsewhere) or whether these accommodations were only necessary to enable her to continue to work in her current job because the stress of working for Passadin aggravated her back condition. On the one hand, Dr. Fields did not expressly condition his recommendation—that Wernick not be required to sit for prolonged periods and that she be provided with the use of ergonomic furniture—on her returning to her current position. Furthermore, he stated at deposition that "the level of emotional distress and inability to get up and down [were the two factors of which Wernick complained but] [i]f those were not there I have no reason to believe she couldn't do the job." On the other hand, when asked at deposition whether Wernick was disabled, Fields responded: "It's a hard question to answer. What do you mean by disabled?" When asked whether Wernick was "physically capable" of "having a job," he conceded that she was. He also stated: "I think my testimony is that from my history and exam, combined with Dr. Glazer's comments, that I felt that it was inappropriate for her to return to exactly the same circumstances she was [in] before and that she was medically disabled from returning to those particular circumstances." Furthermore, Wernick herself stated at deposition: "I was physically able to work, but not in that environment."

If a jury reasonably could have found that Wernick needed work environment modifications in order to perform any job, and that therefore she was disabled, it was error for the district court to hold that, as a matter of law, she was not disabled. If, however, the only reasonable conclusion a jury could have reached was that Wernick needed the accommodations solely to perform her current job, the district court correctly granted summary judgment in favor of the Fed on the ground that Wernick was not disabled, because, as we held in *Heilweil,* "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." 32 F.3d at 723. This holding is consistent with the applicable regulation. 29 C.F.R. § 1630.2(j)(3)(i) provides in pertinent part:

> With respect to the major life activity of working[,] ... [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial

limitation in the major life activity of working.

See also, 2 Equal Employment Opportunity Commission, EEOC Compliance Manual, EEOC Order 915.002, § 902, Definition of the Term "Disability." Our sister circuits are in substantial agreement. See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726–27 (5th Cir.1995) (plaintiff's inability to perform a narrow range of jobs does not qualify her as having an impairment that substantially limits a major life activity); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir.) (plaintiff required to show not just that her impairment incapacitated her for a particular job, but, more broadly, for the type of employment involved), cert. denied, —— U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir.1992) ("[A]n impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the [Rehabilitation] Act."); Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir. 1992) ("It is well established that an inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substantially limit employment generally."); Jasany v. United States Postal Serv., 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) ("An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.").

We do not have to decide whether the district court correctly held that Wernick, as a matter of law, was not disabled because even if she was disabled within the meaning of the disability acts, the district court's grant of summary judgment must be affirmed because the accommodations offered by the Fed were sufficient to discharge its obligation under the disability acts to make reasonable accommodations.

III. The Bank's Accommodations

Under the disability acts, the failure to make reasonable accommodations for one who is disabled can constitute discrimination. 42 U.S.C. § 12112(b)(5)(A) provides that

the term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

The disability acts define the term "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." See 42 U.S.C. § 12111(9)(B); see also 34 C.F.R. § 104.12.

■ Wernick does not contest the Fed's willingness to accommodate her disability in a variety of ways. In fact, she concedes that the Fed offered to provide ergonomic furniture and to allow her to move around and stretch periodically. She claims, however, that by failing to assign her to work under a different supervisor, the Fed did not satisfy the reasonable accommodation requirement of the disability acts.

■ We have previously stated that " 'reasonable accommodation' does not mean elimination of any of the job's essential functions." Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir.1991). The Fed has steadfastly maintained, and the district court implicitly concluded, that one of the essential functions of Wernick's job was to work under her assigned supervisor, who at the time was Passadin. Nothing in the record leads us to disturb this conclusion. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons. Contrary to the suggestion by Wernick's counsel in his brief and at oral argument, the Fed did not have an affirmative duty to provide Wernick with a job for which she was qualified; the Fed only had an obligation to treat her in the same manner that it treated other similarly

qualified candidates. *See School Bd. v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1035–36 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *see also Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996).

■ Whether or not something constitutes a reasonable accommodation is necessarily fact-specific. *See Borkowski,* 63 F.3d at 138 (" '[r]easonable' is a relational term"). Therefore, determinations on this issue must be made on a case-by-case basis. In this case, the accommodations offered by the Fed were plainly reasonable. The Fed did agree, albeit without conceding that Wernick was disabled, to provide Wernick with ergonomic furniture and to allow her to move around and stretch periodically. Under these circumstances, we easily affirm the district court's grant of summary judgment and its dismissal of Wernick's federal and state law claims.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.