CICLE FRANCESCO MOSER,
S.R.L., Plaintiff,

v.

CANNONDALE USA, INC., doing
business as Cannondale,
Defendant.

No. 96 Civ. 9475(BDP).

United States District Court,
S.D. New York.

July 23, 1998.

Frank Ciano, Pino & Associates, White Plains, NY, Steven Mancinelli, New York City, for Plaintiff.

Jonathan Moskin, Pennie & Edmonds, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff Cicle Francesco Moser, S.R.L. ("Moser"), an Italian bicycle manufacturer, brought this suit against Cannondale Corporation ("Cannondale"),[1] a Connecticut corporation that manufactures high performance bicycles, asserting claims under § 43(a) of the Lanham Act; §§ 349, 350, and 368–d of New York General Business Law; and for unjust enrichment and common law unfair competition. Cannondale contends that this Court lacks subject matter jurisdiction over this matter, and moves under Fed.R.Civ.P. 12(b) to dismiss or, in the alternative, under Fed.R.Civ.P. 56 for summary judgment.[2] For the reasons stated below, this Court grants defendant's motion for summary judgment.[3]

## BACKGROUND

Team Saeco is an Italian bicycle racing team headquartered in the Republic of San Marino, where it is owned by Juvenes S.A. and its public affairs are controlled by SAJ. In 1996, the team first competed under the principal sponsorship of Saeco, S.p.A., an Italian manufacturer of espresso machines.

On November 15, 1995, Moser entered into a contract to sponsor Team Saeco for the 1996 racing season. The agreement covered the period from January 1 to December 31, 1996.

In early June 1996, Cannondale's European subsidiary, Cannondale BV, and Team Saeco exchanged letters of intent regarding Cannondale's sponsorship of Team Saeco for 1997 and 1998, with an extension option for 1999–2000.[4] A sponsorship contract was signed, in Switzerland by a representative of Cannondale on August 18, 1996, and in Italy on August 22, 1996 by a representative of SAJ. While Moser originally contended that the August 1996 contract was not binding because there was no meeting of the minds between Cannondale and Team Saeco, and that a formal sponsorship contract between Cannondale and SAJ was not signed until October 8, 1996, Moser has apparently abandoned that argument.[5]

In July 1996, Cannondale obtained technical information from Team Saeco and used the information to prepare bicycles for testing and use by the team. Three prototype bicycles were delivered to the Team in August 1996. Team Saeco raised no issue regarding the technical sufficiency of Cannondale's bicycles, and Cannondale worked with the team thereafter in preparation for the 1997 season.

At a trade show held in Germany from September 4–8, 1996 to allow manufacturers to promote their product lines and take or-

---

1. Plaintiff misidentified Cannondale as Cannondale USA, Inc. in the complaint.

2. Cannondale also moves to stay this action pending determination of an action filed in Italy by plaintiff. If this action is not dismissed, Cannondale moves for a more definite statement.

3. Plaintiff has represented to the Court that it required no further discovery if the Court were to consider this motion as one for summary judgment.

4. While one of the letters of intent provided by defendant states that it is between Team Saeco and Cannondale Corporation, defendant's statement of undisputed facts pursuant to Local Rule 3(g) states, and plaintiff does not dispute, that the June letters of intent were between Team Saeco and Cannondale BV. Although the connection

between Cannondale Corporation and its European subsidiary Cannondale BV is unclear, neither party has addressed, and this Court cannot now decide, whether Cannondale Corporation is a proper party to this action.

5. In its supplemental brief on conflicts of law issues, Moser concedes that "[u]nder Italian Civil Code the contract in question is considered concluded on August 22, 1996 when the final party executed the contract." In addition, despite a June 8, 1998 Court Order to provide the law applicable to the formation of contract issues and a specific request from the Court to provide the law applicable to a determination of the meeting of minds issue, both parties have failed to provide any statement of the relevant law.

ders for the coming year, Cannondale distributed copies of its 1997 catalog and a press release. The catalog contained several photographs of Team Saeco members. The press release headline read, "Cannondale named official bike & clothing sponsor of Saeco professional cycling team," and did not state that the sponsorship began in 1997.

## DISCUSSION

*Summary Judgment Standard*

■ In this case, both parties have provided the Court with matters outside the pleadings. As a result, the Court will treat this motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.[6] A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes,* 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to,

and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir. 1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes,* 84 F.3d at 619; *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. *Wernick,* 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505).

Generally, the burden is on the ·moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation,* 88 F.3d at 123; *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research,* 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

*Claims Under § 43(a) of the Lanham Act*

■ Plaintiff contends that Cannondale's September 1996 announcement that it "had been named" the sponsor for Team Saeco was false and/or misleading and violated § 43(a) of the Lanham Act.[7] 15 U.S.C.

---

6. While defendant contends that Moser has identified no injury in or affecting United States commerce or arising under New York law, and that this Court consequently lacks subject matter jurisdiction over this action, plaintiff's complaint asserts the facts necessary for a finding of federal subject-matter jurisdiction based on diversity; that is, that plaintiff, an Italian corporation, is suing defendant, a Connecticut corporation, for an amount in excess of $75,000 exclusive of costs and interests. *See* 28 U.S.C. § 1332(a); *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 475, 136 L.Ed.2d 437 (1996) (where complete diversity exists, so does federal subject-matter jurisdic-

tion). While plaintiff did not assert diversity jurisdiction as a basis for this Court's jurisdiction over this matter, "[t]his court must liberally construe plaintiffs' complaint 'to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded.' " *Curley v. Brignoli, Curley & Roberts Assoc.,* 915 F.2d 81, 84 (2d Cir.1990) (quoting *New York State Waterways Ass'n v. Diamond,* 469 F.2d 419, 421 (2d Cir.1972)).

7. This provision provides:

   (a) Civil action

§ 1125(a). In order to recover damages or obtain equitable relief under this provision, "a plaintiff must show that either: 1) the challenged advertisement is literally false, or 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992).

Plaintiff first argues that Cannondale's announcement was literally false at the time Cannondale issued its press release and marketing catalog in September 1996, contending that the contract between Cannondale and Team Saeco was not yet effective because of an unfulfilled condition under the terms of the contract. Specifically, Moser contends that Article 6 of the sponsorship agreement expressly conditioned the contract on Team Saeco's approval of the equipment to be provided by Cannondale, which could occur only after January 1, 1997.

Article 6 of the sponsorship agreement states:

> The effects of the present contract shall be valid after the SAECO Pro Cycling Team Group has approved the technical validity of the equipment produced by the SPONSOR for the 1997 – 1998 – 1999 competitive activities, using them as from January 1, 1997, to December 31, 1999.

Nothing in the plain language of Article 6 indicates that approval of Cannondale's equipment cannot occur before January 1, 1997.

Both Italian and Swiss law permit contracts to contain conditions such as this one.[8] With respect to the applicable provisions of Italian law, plaintiff submits a declaration of Avv. Massimo Casini, Italian counsel for Moser and an attorney admitted to practice before the Courts in Italy.[9] Casini states that because of Article 6, the contract between SAJ and Cannondale could not take effect until January 1, 1997, after Team Saeco approved the technical validity of the materials produced by the sponsor. On the other hand, in a declaration by Dr. Luigi Sagliette, an attorney admitted to practice before the Courts in Italy, defendant maintains that the condition contained in Article 6 did not affect the contract's finality and cites to § 1665 of the Italian Civil Code, which provides: "If the customer takes delivery of the work without reservation, such work is considered to have been accepted even if there was no testing."

With respect to the applicable provisions of Swiss law, defendant submits the declaration of Martin Lutz, an attorney admitted to the Zurich Bar who holds a bachelor's and doctor's degree from the University of Zurich, a master's degree from the University of Michigan, and specializes in national and international law in the fields of intellectual property, media, licensing, and litigation. Lutz states that the condition contained in Article 6 generated obligations for both parties even prior to satisfaction of the condition. Team Saeco, which was ultimately to examine and approve the equipment supplied by Cannondale, had to "undertake in good faith everything necessary for the later implementation

---

(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—
  (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
  (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125.

8. Plaintiff contends that Italian law applies to the formation of contract issues in this case, while defendant argues that either Swiss or Italian law applies. Because the result would be the same under the law of either jurisdiction, this Court need not determine which country's law applies here.

9. Under Fed.R.Civ.P. 44.1, in determining foreign law, a court may consider any relevant material or source, including testimony, whether or not admissible under the Federal Rules of Evidence.

of the contract," and refrain from entering into any contracts with third parties that would impair later performance. In addition, if the equipment was not approved, it would have to be returned, and Team Saeco would have to provide good faith reasons for the equipment's non-approval.

■ Notwithstanding any controversy as to when full satisfaction of the condition in Article 6 occurred, Cannondale's advertisement states only that Cannondale had been "named" the official sponsor of Team Saeco. As Cannondale points out, "named" means only "nominated," "appointed," or "chosen." *Webster's Ninth New Collegiate Dictionary* 786 (1987). Thus, even if plaintiff is correct, and at the time of the trade show the sponsorship contract was not final under Swiss or Italian law, given the legitimate expectations of the parties that arose with the signing of the contracts that the contracts would become final, and the absence of any evidence that the contract had been repudiated through rejection of equipment or otherwise, it was not false to state that Cannondale had been "named" sponsor.

■ Plaintiff next argues that even if Cannondale's sponsorship announcement and representations in its marketing strategy were literally true, they were nonetheless misleading, because they implied that Cannondale was Team Saeco's 1996 sponsor rather than stating that the sponsorship agreement did not begin until 1997. Where, as in this case, the plaintiff seeks recovery on the basis of an implied falsehood, the "plaintiff must demonstrate, by extrinsic evidence, that the challenged [representations] tend to mislead or confuse consumers." *Johnson & Johnson v. Smithkline*, 960 F.2d at 297. This question is not one that a court can answer based upon its intuitive reaction; rather, "[t]he question in such cases is—what does the person to whom the advertisement is addressed find to be the message?" *Id.* (quoting *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 166 (2d Cir.1978)) (other citations omitted). The an-

swer to this question usually turns on a consumer survey. *Id.* at 298.

■ Here, plaintiff has offered no evidence—consumer survey or otherwise—to establish that Cannondale's representations had a tendency to mislead or confuse consumers. While Moser cites three letters of foreign bicycle manufacturers attached to the complaint, these letters do not support Moser's claim that the manufacturers were misled by Cannondale's representations.[10] Because plaintiff has offered no evidence that would allow a jury to find in its favor on this claim, plaintiff's claim under § 43(a) of the Lanham Act fails.

### State Law Claims

■ Defendant also moves for summary judgment on plaintiff's state law claims. In this case, because plaintiff has failed to demonstrate a likelihood of confusion, plaintiff's common law claims for unfair competition and unjust enrichment (based on the same conduct as the Lanham Act claim) fail. *See, e.g., Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995) ("In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief"). In addition, plaintiff contends that due to Cannondale's "false and misleading representation of sponsorship and the use of Team Saeco photos to support that false representation" the value of Moser's trade name was diluted. As this Court has determined that Cannondale's representation of sponsorship was not false and Moser has presented no evidence that it was misleading, this claim fails as well. Finally, this Court notes that Moser has not opposed Cannondale's motion for summary judgment on Moser's claim for violation of state deceptive trade practices and false advertising, where Cannondale contends that Moser cannot show harm to consumers or injury to the public interest. Accordingly, that claim is dismissed as well.

---

10. The first letter states only: "We hear that Cannondale in America will supply frames for Saeco"; the second letter states that the team

"signed with another bicycle manufacturer for the 1997 season;" the third simply cancels an order for 1997.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of the Court is directed to enter judgment for the defendant.

**SO ORDERED:**