Marie **FARRICIELLI**, Plaintiff,

v.

**BAYER CORPORATION**, Defendant.

No. Civ. 3:97CV1383 PCD.

United States District Court,
D. Connecticut.

March 31, 1999.

Anne Noble Walker, Pepe & Hazard, Hartford, CT, Kathryn D. Fabiani, Pepe & Hazard, Southport, CT, for Marie Farricielli, plaintiff.

Kevin J. O'Connor, Day, Berry & Howard, Hartford, CT, Gail L. Gottehrer, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, David G. Hetzel, LeBoeuf Lamb Greene & MacRae, Pittsburgh, PA, for Bayer Corp, defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff sues alleges discrimination based on her age and a perceived disability pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. She also alleges, under state law the same discrimination, intentional and negligent infliction of emotional distress, and negligent supervision.

Defendant moves for summary judgment on all claims.

## I. BACKGROUND FACTS

Plaintiff was a full-time employee of defendant since 1991, specifically as Scientific Affairs Coordinator under several supervisors for approximately four and a half years, since July 1995, under Neumann.

Prior to November 1995, plaintiff suffered from Supraventricular Tachycardia, a heart condition that required emergency medical treatment periodically. From July 1995 to November 1995, plaintiff's condition worsened and she required emergency medical treatment more frequently. In October 1995, plaintiff took a medical leave of absence and underwent heart surgery.

Upon returning to work in early January 1996, plaintiff had just turned 50 and was under no medical restrictions. Within a few days of her return, plaintiff was called to meet with Neumann and Schweinle, Neumann's supervisor. According to plaintiff, Schweinle and Neumann did not mention any problems with plaintiff's job performance but, referred to plaintiff's health and, tried to persuade her to take a "less stressful," lower salary position in the department because it would be less busy and demanding than the Scientific Affairs Coordinator position. Plaintiff assured Neumann and Schweinle that she was under no medical restrictions and was fully capable of performing her job. Neumann and Schweinle then knew that the Scientific Affairs Department was going to grow significantly and become more stressful. They believed that they were acting in plaintiff's best interest by suggesting the transfer. Plaintiff agreed to consider the transfer when it became clear that Neumann and Schweinle did not want her as the Scientific Affairs Coordinator. When Collins, an upper-level employee in the Human Resources Department, informed plaintiff that not only would her salary grade be reduced by the transfer, but that her salary would be frozen until an indeterminate date, plaintiff refused the transfer.

Plaintiff claims that only after she refused the transfer did Neumann inform her of problems with her job performance. After the January 1996 meeting, Neumann apparently prepared a memo listing areas of plaintiff's performance that needed improvement. Then Neumann allegedly began a campaign of harassment and abuse criticizing her work, making unreasonable demands and yelling at her in front of others. She was excluded her from meetings she normally attended, and her work was given to younger, temporary female employees. A co-worker was instructed not to assist plaintiff with her work.

Plaintiff did not complain about her problems with Neumann before she took her medical leave because she states that those problems began after returning from her leave. After Neumann failed to get her to transfer out of her position and his

harassment began, she claims that she complained to Schweinle and Collins about Neumann's behavior several times. Collins spoke to Neumann following each of plaintiff's complaints, which made Neumann act more abusively and informed Senior Vice President Rosenberg, Schweinle's supervisor, of plaintiff's complaints.

Plaintiff's April 1996 performance appraisal by Neumann rated her as "meets expectations," the equivalent of a good performance evaluation. Performance problems are not mentioned. Shortly after receiving this appraisal, Shek, another supervisor, suggested that plaintiff could transfer to a senior secretarial position where she would be supervised by Layman. The transfer had been agreed to by Schweinle, Layman, Collins and plaintiff, but the transfer never went through. Apparently, on the same day she was told about the transfer, Neumann met plaintiff in his office for a two hour meeting. Plaintiff claims that Neumann then told her that he was blocking the transfer based on her poor performance in that he did not want to pass along his problems to anyone else. Neumann allegedly told plaintiff that she was not competent to handle a lower grade secretarial position, and that her performance had deteriorated since her return from medical leave. When asked why he had given her a good performance rating, plaintiff alleges that Neumann changed his story, stating that her performance had declined really over the previous two weeks.

In June 1996, defendant transferred plaintiff to a senior secretarial position in the Meetings and Conventions Department. Neumann then met with plaintiff's new supervisor and the department head to inform them of plaintiff's alleged performance problems. Plaintiff claims that based on this meeting she was regarded by her new supervisor as a problem employee and he criticized and harassed her as well.

By October 1996, plaintiff alleges she was so physically distraught over the continued harassment that she was forced to take a leave of absence to get treatment for high blood pressure, severe depression and anxiety. During her leave, she received short-term disability payments until April 1997, at which time they were discontinued by defendant, though she was not medically released to return to work. Defendant claims that plaintiff was invited to return to both her senior secretary and Coordinator positions, but plaintiff refused, even though Neumann was no longer in the department and would not have supervised her. Defendant states that plaintiff was invited to interview for other positions, but after two unsuccessful interviews, refused to do anymore.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted when "the pleadings, depositions, ... and admissions on file, ... show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Movant must make this showing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

### A. Disability Discrimination Claims

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.

§ 12111(8). An individual with a disability is a person who has a physical or mental impairment that substantially limits one or more of his/her major life activities, has a record of such an impairment, or is regarded as having such an impairment.

■ Where there is no direct evidence of discrimination, a plaintiff must show (1) that she was disabled within the meaning of the ADA; (2) that she was otherwise qualified, with or without reasonable accommodation, to perform her job; and (3) that she suffered an adverse employment decision because of her disability. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996). If plaintiff meets this burden, then defendant must show a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must rebut by showing by a preponderance of the evidence that the employer's reasons are merely a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Plaintiff alleges that her January 1996 meeting with Neumann and Schweinle when they professed concern for her health and suggested that she transfer to a less stressful position is direct evidence of discrimination, which defendant must now rebut by establishing that it would have made the decision regardless. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Defendant asserts that plaintiff is not a "qualified individual with a disability" because she could not satisfy the requirements of her job notwithstanding her disability. Defendant points to the job performance problems raised by Neumann and Schweinle in their deposition testimony. In a 1991 performance review plaintiff's supervisor indicated that she needed to improve her writing and computer skills and to learn how to effectively manage her time and deal with stress. Farricielli Dep. at 41. Plaintiff argues that she received good performance reviews amidst Neumann's complaints of poor performance. There is a genuine issue of material fact as to whether plaintiff was qualified to do her job despite her disability, or whether unrelated performance problems were the root of defendant's actions. Additionally, to satisfy the second element of a *prima facie* case, plaintiff does not need to show that her performance was flawless or superior, simply that she possessed the basic skills necessary for her job. *Sergio de la Cruz v. N.Y. City Human Res. Admin. DSS*, 82 F.3d 16, 20 (internal citation omitted). It is the role of the fact finder, not the court, to resolve conflicting testimony and weigh the credibility of the witnesses. *See Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505 (Fed.R.Civ.P. 65 "by no means authorizes trial on affidavits. Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions and not those of a judge").

Next, defendant claims that plaintiff cannot show that she was subjected to an adverse employment action due to her disability. Defendant states that Neumann and Schweinle's suggestion that she transfer to another position was motivated by their concern for plaintiff's health in response to her complaints about job-related stress and that when she declined they accepted her decision. Nor does Neumann's subsequent decision to block her transfer, which is undisputed, or the subsequent reprimands of plaintiff by her supervisors qualify as adverse employment actions, defendants claim. However, protections provided by employment discrimination statutes are not limited to "instances of discrimination in pecuniary emoluments." *Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (1980) (transfer of art teacher from junior high school to elementary school held to be an adverse employment decision); *de la Cruz v. N.Y. City Human Res. Admin. DSS*, 82 F.3d at 21. The actions and motivations of both parties in relation to these events is disputed and cannot be determined on a summary judgment motion.

Defendant argues that even if plaintiff can prove that she was qualified and that adverse employment actions were taken against her, she cannot show that the actions were based on her perceived disability. However, Neumann's own deposition testimony clearly reflects that he was motivated by concerns for her health and how her position as Coordinator would affect her health. Defendant's argument is contradicted by its own evidence and is unavailing.

Based on the previous discussion, defendant's motion for summary judgment is denied on the disability discrimination claims.

### B. Age Discrimination Claims

■■■■ A claim under the ADEA is governed by the three step analysis of a Title VII discrimination case. *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A plaintiff must first establish a *prima facie* case of age discrimination by showing: "(1) that he was within the protected age group, (2) that he was qualified for the job, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993). Replacement by a younger employee is sufficient to satisfy the fourth element of a *prima facie* case. *Montana v. First Federal S. & L. of Rochester*, 869 F.2d 100, 105 (2d Cir.1989); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990). Plaintiff's burden in establishing a prima facie case is *de minimis*. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–4 (2d Cir.1995). Once plaintiff has established a *prima facie* case, then defendants must "offer a legitimate, nondiscriminatory business rationale for [their] actions." *Woroski*, 31 F.3d at 108. Plaintiff then has the burden of proving that any articulated reason is a pretext for age discrimination. *Id.*

■■ Plaintiff has established the first two prongs of a *prima facie* case. She is within the protected age group. Although the parties disagree as to the quality of her performance, her job evaluations are sufficient to create a genuine issue of fact as to her qualifications for the job. Plaintiff's proof for the fourth prong, that she was discharged under circumstances raising an inference of age discrimination, is much weaker. She alleges that when she "left the position of Scientific Affairs Coordinator, the functions and responsibilities of her position were assigned to and performed by two newly hired employees each of whom is under the age of 40." Complaint at ¶ 27. Her affidavit states that Neumann gave her work to younger, female temporary employees to perform. Farricielli Affidavit at ¶ 12. Defendant states that after plaintiff left the department, the Scientific Affairs Coordinator position was dissolved, and two secretarial positions were created and filled by other Bayer employees, one of whom was under forty years of age and one who was older than forty. Schweinle Deposition at 95; Collins Affidavit at ¶ 17. Plaintiff's claims suggest that the asserted dissolution was an afterthought. Defendant's evidence of inviting plaintiff to return to the Coordinator's position during her leave of absence undercuts the claimed dissolution. Plaintiff's evidence, including that in support of her disability discrimination claims barely establishes a *prima facie* showing for her age discrimination claims and a reasonable basis to find pretext in defendant's proffer of nondiscriminatory reasons. As the plaintiff's burden in this regard is *de minimis*, summary judgment is denied on Counts Three and Four.

### C. Infliction of Emotional Distress

■■ To prevail in a claim for intentional infliction of emotional distress under Connecticut law, plaintiff must demonstrate (1) that the defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of his conduct; (2) that the conduct

was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986).

"[E]xtreme and outrageous" conduct has been defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). Whether a defendant's conduct is extreme and outrageous is ordinarily a question of fact, *see Bozzuto v. Holler,* 1996 WL 737516 (Conn.Super.Ct.1996); *Redding v. Liberty Bank,* 1996 WL 383379, *3 (Conn.Super.1996), but summary judgment may be appropriate where the plaintiff fails to allege specific facts which a reasonable jury could find constituted extreme and outrageous conduct, *see Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987).

■ No rational fact finder could conclude that the alleged conduct—yelling at, reprimanding and transferring plaintiff for work-related issues—was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 1 Restatement (Second), Torts § 46, comment (d). Accordingly, defendant's motion for summary judgment on the intentional infliction of emotional distress claim is granted.

■ For a negligent infliction of emotional distress claim, plaintiff must establish that "the defendant[s] should have realized that [their] conduct involved an unreasonable risk of causing emotional distress." *Morris v. Hartford Courant,* 200 Conn. 676, 683, 513 A.2d 66 (1986) (quoting *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978)). The distress need not be accompanied by physical illness or bodily harm, so long as it "might result in illness or bodily harm." *Montinieri,* 175 Conn. at 345, 398 A.2d 1180. Negligent

infliction of emotional distress claims are "limited so as not to 'open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.'" *Montinieri,* 175 Conn. at 345, 398 A.2d 1180 (quoting Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv.L.Rev. 1033, 1035 (1936)). Drawing all factual inferences in plaintiff's favor, a rational fact finder might conclude that defendant should have realized that its alleged conduct involved an unreasonable risk of causing harm to plaintiff. Thus, summary judgment is denied on the negligent infliction claim.

### D. Negligent Supervision Claim

■ Plaintiff claims that defendant negligently supervised Neumann, Schweinle, Hunter and other employees who allegedly discriminated against her and harassed her. She asserts, in a conclusory fashion, that despite complaining repeatedly to Schweinle and Collins about Neumann's behavior, they did nothing to stop the treatment. Senior Vice President Rosenberg testified in his deposition that Collins informed him of plaintiff's complaints regarding Neumann, but he did not know that plaintiff was claiming that Neumann was discriminating against her until she filed this suit. Rosenberg Deposition at 45. He believed that she had a personality conflicts with her supervisors. *Id.* Plaintiff concedes in her deposition that she did not formally complain about discriminatory treatment to defendant, Farricielli Deposition at 67–68, 71–73, though she informally complained to Collins about Neuman's behavior. The depositions and affidavits of Collins and Rosenberg demonstrate defendant was aware of plaintiff's complaints and attempted to address them. See generally Rosenberg Deposition and Collins Affidavit. Indeed, plaintiff's own allegations seem to contradict her assertions here. Since plaintiff has not produced any evidence to establish a genuine

issue of material fact, summary judgment is granted.

## III. CONCLUSION

Based on the previous discussion, defendant's Motion for Summary Judgment (doc. 17) is **granted in part, denied in part.** Summary judgment is **granted** on Count Six (intentional infliction of emotional distress), and Count Eight (negligent supervision). Summary judgment is **denied** as to Counts One, Two, Three, Four and Five (disability discrimination), and Count Seven (negligent infliction of emotional distress).

SO ORDERED.