**Ann CURCIO, Plaintiff,**

v.

**BRIDGEPORT BOARD OF EDUCATION, Defendant.**

**Civil Action No. 3:03 CV 2261(CFD).**

United States District Court,
D. Connecticut.

March 15, 2007.

John R. Williams, New Haven, CT, for Plaintiff.

John Richard Mitola, City of Bridgeport Office of the City Attorney, Bridgeport, CT, for Defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

Plaintiff Ann Curcio brought this action against her employer, the Bridgeport Board of Education ("Board of Education" or "Board"), under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 et seq.; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60(a)(1) et seq. Curcio claims that the Board discriminated against her on the basis of disability in violation of her rights under these statutes. For the following reasons, the Board's motion for summary judgment is granted in part.

### A. Background [1]

Curcio started working for the Board of Education in September 1998 under a grant as a part-time Program Assistant Employment Specialist. In September 1999 she was hired on a full time basis in her current position, a paraprofessional Special Education Instructional Assistant. In December 1994, Curcio had been assaulted and suffered serious head trauma, broken teeth, a broken bone in her neck, myofacial tissue damage in her upper body and the base of her skull, permanent damage to her neck, posttraumatic stress disorder, panic attacks, and major depression.

Because of the attack, Curcio claims that she still suffers from traumatic brain syndrome, posttraumatic stress disorder, clinical depression, and periodic early morning stiffness and pain, and that these disorders cause her to suffer chronic difficulty in concentrating, memory problems, difficulty managing stress, difficulty arriving at work on time, and disturbed sleep.

In 1998, Maureen Shannon, the Board's Transition Coordinator for Special Education, recruited Curcio to work for her. During their recruitment conversations, Curcio told Shannon about the 1994 assault and mentioned that she still suffered from its effects. Curcio claims that she also told Shannon she would need certain accommodations because of her disorders, although Shannon disputes this. Curcio admits, however, that she never submitted to the Board any medical documentation supporting her claim of injuries or any request for accommodations.

Curcio's current employment problems with the Board began in the 2001–2002 school year. Shannon has been Curcio's supervisor since Curcio commenced her employment at the Board of Education. During the 2001–2002 school year, Shannon started requiring all paraprofessional staff under her supervision to fill out vocational profile forms, which were intended to document their students' progress. Curcio did not comply with this order. Later that year, Shannon received a complaint from another paraprofessional that Curcio was interfering with her work.[2] Curcio also allegedly violated Shannon's orders pertaining to organizing a field trip, complying with a daily sign-in require-

---

[1]. The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[2]. Curcio seems to dispute that the co-worker submitted a complaint to Shannon, but she presents no evidence supporting her position. The Board submitted an affidavit of the co-worker stating that she did complain about Curio to Shannon orally and in writing.

ment, and attending weekly planning meetings that Shannon scheduled for her with a teacher at the Board's Central High School.[3] Tensions between Curcio and Shannon continued to build throughout the 2001–2002 school year. Shannon claims that Curcio regularly ignored her directives and that Curcio openly criticized her to teachers and in front of students.

At the end of the 2001–2002 academic year Shannon gave Curcio a generally poor evaluation, including numerous "unsatisfactory" marks, and she stated that she would not support Curcio's re-appointment. Shannon also attached a memo that attacked Curcio's job performance as highly unprofessional and destructive to her students. Pursuant to the Board of Education's policy, Carole Pannozzo, the Board's Director of Human Resources, held two meetings in October 2002 to discuss Curcio's poor evaluation and problems between Curcio and Shannon during the 2001–2002 school year. Pannozzo, Curcio, Shannon, and union representatives for Curcio attended both meetings. The Board maintains that Curcio first mentioned she was unable to complete Shannon's vocational profile forms due to a disability at these meetings. Five days after the second meeting Pannozzo issued Curcio a verbal warning for her alleged conduct towards Shannon during the 2001–2002 school year and for her poor job evaluation.

### B. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 5(c)); *accord Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548; *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R.Civ.P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex*, 477

---

**3.** Curcio disputes the Board's characterization of these incidents, although she concedes that problems arose regarding the field trip, the sign-in sheets, and the planning meetings.

U.S. at 323, 106 S.Ct. 2548. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Maffucci*, 923 F.2d at 982.

### C. Discussion

#### 1. Curcio's Claim under the ADA [4]

 Curcio alleges that her poor job evaluation for the 2001–2002 school year and the verbal warning she received in October 2002 constituted unlawful discrimination based on her disabilities. Under the ADA, an employer may not discriminate against any "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A plaintiff alleging disability discrimination "bears the initial burden of establishing a prima facie case." *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996). Meeting this burden requires the plaintiff to show that (1) her employer is subject to the ADA; (2) she is disabled pursuant to the ADA; (3) she is qualified to perform the essential functions of her job; and (4) she suffered an adverse employment action because of the disability. *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir.2001). The parties do not dispute that requirements (1), (3), or (4) are satisfied. Curcio's claim fails, however, because she did not raise a genuine issue of material fact that she is disabled within the meaning of the ADA.

 District courts must conduct an individualized, fact-specific inquiry to de-termine whether a particular plaintiff is disabled under the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see Riddle v. Liz Claiborne, Inc.*, No. 00 Civ. 1374, 2006 WL 3057289, at *6 (S.D.N.Y. Oct. 27, 2006). The ADA defines a disability to be:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment;
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The statutory language "substantially limits" is crucial in assessing whether a particular impairment constitutes a disability for ADA purposes: although many individuals suffer an impairment that affects major life activities, only a subset of those individuals are substantially limited by the impairment. *Ryan v. Grae & Rybicki, P. C.*, 135 F.3d 867, 870 (2d Cir.1998). An individual is only substantially limited by an impairment when it renders the individual "significantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to ... the average person in the general population." *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 195–96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (citation omitted).

 Major life activities include the activity of working. 29 C.F.R. § 1630.2(I); *see Ryan*, 135 F.3d at 870 (acknowledging that although Congress left the ADA's terms "major life activities" and "substantially limits" undefined, EEOC regulations, while "not binding, ... provide us with guidance in interpreting the ADA"). For a

---

**4.** Although the Board's memorandum in support of summary judgment mentions a retaliation claim, the Court does not address the Board's arguments because there is no indication in Curcio's complaint that she brought such a claim.

plaintiff's impairment to substantially limit the major life activity of working, so as to trigger the ADA's protection, the impairment must significantly restrict the plaintiff's "ability to perform either a class of jobs or a broad range of jobs in various classes ... The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Giordano*, 274 F.3d at 747–48 (discussing EEOC regulation 29 C.F.R. § 1630.2(j)(3)). Impairments that "interfere in only a minor way with the performance of [working]" are not disabilities under the ADA. *Toyota Motor Mfg.*, 534 U.S. at 197, 122 S.Ct. 681.

■ To be entitled to the ADA's protections Curcio must complete her prima facie case by showing she is disabled under this statutory framework. She can accomplish this either by showing that her claimed impairments substantially limit the major life activity of working, or by providing evidence that the Board of Education believed that she had such an impairment and discriminated against her on that basis.[5] *See* 42 U.S.C. §§ 12102(2)(A) & (C). Based on the evidence in the record, however, Curcio cannot, as a matter of law, prove she is disabled. Plaintiffs seeking ADA protection must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial." *Toyota Motor Mfg.*, 534 U.S. at 198, 122 S.Ct. 681 (citation omitted). Here, Curcio concedes that she never submitted any documentation of an impairment to the Board; in this lawsuit she similarly did not provide any evidence of a disability outside of her own unsupported assertions. Curcio never specifies how her cognitive impairments actually limit her ability to work

aside from alleging, without producing supporting evidence, that they prevent her from completing Shannon's vocational profile forms. This minimal evidence does not show that Curcio's claimed impairment substantially limits her ability to perform a class of jobs or a broad range of jobs in various classes. *See Giordano*, 274 F.3d at 747–48. Finally, Curcio's claim that she is disabled is directly contradicted by her own testimony that she has "always found a way to do [her] job duties" and that she "took care of everything that [she] had to take care of and more always." Deposition of Ann Curcio, June 14, 2005, at 139. Since Curcio herself does not dispute that she was not substantially limited in completing her job, her claim that her impairments constitute a disability under the ADA fails as a matter of law. *See Matya v. Dexter Corp.*, No. 97–CV–763C, 2006 WL 931870, at *7 (W.D.N.Y. Apr. 11, 2006) (finding that the plaintiff could not be disabled under the ADA where he asserted that he was able to fully complete his job despite his claimed impairments).

■ Curcio also does not establish that she is entitled to the ADA's protections on the ground that the Board of Education improperly perceived her to be disabled. A plaintiff is disabled under the ADA if her employer wrongly believes she is disabled—that is, if the employer believes her impairments substantially limit her ability to work when in fact they do not. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *see* 42 U.S.C. § 12102(2)(C). The timing of the Board's knowledge of Curcio's impairment is disputed; Curcio claims that Shannon knew she was disabled from the outset of Curcio's employment, while the Board claims Curcio's first mention of any dis-

---

**5.** The Court does not consider whether she is disabled under § 12102(2)(B) of the statute, which prohibits disability discrimination based upon a "record of ... impairment,"

because Curcio admits that she did not submit any documentation of her impairments to the Board or make any requests for accommodation.

ability occurred at one of the October 2002 meetings to discuss Curcio's poor evaluation, when Curcio stated that she could not complete Shannon's vocational profile forms because of a disability. Regardless of when the Board learned of her claimed impairments, however, Curcio identifies no evidence in the record indicating that the Board ever believed Curcio suffered from an impairment that substantially limited her ability to complete her job. Since Curcio failed to establish she is disabled under the ADA, or perceived to be so disabled by the Board, the Board's motion for summary judgment on Curcio's ADA claim is granted.

### 2. Curcio's Rehabilitation Act Claim

█ Curcio also brings her disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 794(a). The Rehabilitation Act prohibits government agencies and other recipients of federal funds from discriminating on the basis of disability. *See* 29 U.S.C. § 794(a). The Rehabilitation Act's statutory language overlaps with that of the ADA, and common terms are to be interpreted in the same way. *Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir.1997). Most relevant to this case, the definition of disability under both statutes is the same. See 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination ... shall be the standards applied under title I of the Americans with Disabilities Act...."); 42 U.S.C. § 12117(b) (requiring agencies enforcing the ADA to develop "procedures to ensure that administrative complaints filed under this subchapter and under the Rehabilitation Act of 1973 are dealt with in a manner that ... prevents imposition of inconsistent or conflicting standards ... under [the ADA] and the Rehabilitation Act of 1973"); *Stone*, 118 F.3d at 96 (discussing these statutes). As discussed above, Curcio failed to establish that she is disabled under the ADA; because of this, then, her claims under the Rehabilitation Act also cannot succeed. Accordingly, the Board's motion for summary judgment on Curcio's Rehabilitation Act claim is granted.

### 3. CFEPA Claim

█ Finally, Curcio alleges that her treatment by the Board violated CFEPA's prohibition against disability-based discrimination. *See* Conn. Gen.Stat. § 46a–60. In light of the Court's grant of summary judgment to the defendants on Curcio's federal claims, the Court declines to exercise its supplemental jurisdiction over Curcio's state law claim. *See* 28 U.S.C. § 1367(a); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claim." (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988))). Curcio's CFEPA claim is therefore dismissed without prejudice to being brought in state court.

### D. Conclusion

For the reasons given above, the Board's motion for summary judgment [docket # 36] is granted in part. Judgment should enter for the defendant on Count One of the complaint, which alleges violations of the ADA and the Rehabilitation Act. Count Two of the complaint, which alleges violations of CFEPA, is dismissed without prejudice. The clerk is ordered to close this case.