Lawrence A. MITCHELL, Jr.,
Plaintiff–Appellant,

v

WASHINGTONVILLE CENTRAL
SCHOOL DISTRICT, Defendant–
Appellee.

**Docket No. 98–7185**

United States Court of Appeals,
Second Circuit.

Argued Dec. 11, 1998.

Decided Aug. 18, 1999.

Robert E. Dinardo, Jacobowitz and Gubits, LLP, Walden, NY, for Plaintiff–Appellant.

Mark C. Rushfield, Shaw & Perelson, LLP, Poughkeepsie, NY, for Defendant–Appellee.

Before: KEARSE, STRAUB, and SACK, Circuit Judges.

SACK, Circuit Judge:

Lawrence A. Mitchell, Jr. appeals from an order of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *J.*) granting summary judgment to Defendant–Appellee Washingtonville Central School District. Mitchell brought a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* following the termination of his employment as Head Custodian at the Washingtonville High School. In granting summary judgment, the district court held that based on Mitchell's prior representations to the New York Workers' Compensation Board and the United States Social Security Administration in obtaining benefits that he was unable to work because he could not stand or walk, Mitchell was judicially estopped from asserting in the present ADA action that he could function other than in a sedentary

position. Concluding that Mitchell therefore failed to show that he was able to perform the essential functions of the Head Custodian position and so make out a prima facie case under the ADA, the district court dismissed his claim.

We affirm.

## I. Background

Mitchell began employment with the Washingtonville Central School District in 1987, working as Head Custodian at the Washingtonville High School. According to the job description, the Head Custodian position "involves the general supervision, care, maintenance and protection of a school building which may include the efficient performance of a variety of groundskeeping activities."[1]

When Mitchell, whose right leg was amputated above the knee following an automobile accident in 1977 and who wears a prosthesis as a result, started as Head Custodian, his work required him to remain on his feet throughout the day except for two hours each day he spent doing desk work, a short coffee break, and a half hour lunch break. By 1989, the amount of desk work had decreased so that three days a week, aside from his breaks, Mitchell spent the entire time up and about.

Within four months of starting work at the high school, however, Mitchell experienced swelling and pain in his right leg which prevented him from wearing his prosthesis, and at times from coming to work. In addition, beginning in 1989,

Mitchell suffered approximately three skin "breakdowns" on his leg each year, lasting for three to four days each time. When this happened, Mitchell was required to limit his use of his prosthesis and take occasional sick leave. These problems resulted from the extensive physical demands of the Head Custodian job, requiring prolonged use of the prosthesis.

Adding to these difficulties, according to Mitchell, the physical size of the high school doubled in 1993 and his work load substantially increased. Following a particularly strenuous day of work on November 5 of that year, Mitchell's leg began to "drain," causing him considerable discomfort. Mitchell thereafter stopped reporting to work and he notified the School District that he had been injured on the job.

In January 1994, Mitchell filed an Employee Claim for Compensation with the New York Workers' Compensation Board, stating that he had been injured at work as a result of "strenuous walking." The School District contested Mitchell's claim. Following a hearing before a Workers' Compensation Judge in June 1994, Mitchell was awarded weekly benefits. The award was also upheld by a decision of the Board, which determined that Mitchell was "totally disabled" from the period November 9, 1993 to July 27, 1994. Revisiting Mitchell's status after that date, the Workers' Compensation Board conducted further hearings in March and June of 1996. At a March 7, 1996 hearing, Mitchell's

1. Listed as "typical work activities" in the job description are the following:

Supervises and performs a variety of daily cleaning chores such as sweeping, dusting, waxing, mopping, window washing, etc.; Supervises and makes minor repairs to furniture, equipment and building such as replacing broken windows, replacing light bulbs and fuses, repairing door latches, adjusting seats and desks, etc.; Plans and schedules work assignments for regular cleaning and maintenance of buildings; May be responsible for or assist in grounds keeping activities such as mowing lawns, cultivating trees and shrubs, collecting paper and rubbish, removing snow, etc.; May operate and perform maintenance on heating and ventilation systems; Ensures that adequate supplies of soap, toilet paper, towels, etc. are available and placed in proper holders at all times; May perform a variety of miscellaneous activities consistent with the effective operation of a school building such as ensuring clocks are regulated for proper time, oiling and greasing mechanical equipment, inspecting roof, delivering packages, storing supplies, acting as night watchman, etc.

treating physician, Dr. Robert G. Kulak, testified that Mitchell had to limit his walking and standing and be able immediately to sit down if he experienced pain. Dr. Kulak therefore concluded that Mitchell remained unable to return to his job because he could not stand for any prolonged period. In a decision of October 10, 1996, accepting these assertions and continuing Mitchell's award, Workers' Compensation Judge John Paul Paksarian determined that Mitchell remained under permanent restriction to a sedentary job.

In April 1994, Mitchell also applied for Social Security disability benefits. In July 1994, after his claim was initially denied, he filed a request for reconsideration, asserting: "I am totally disabled and unable to engage in any type of gainful employment due to being on my feet for long periods of time which resulted in a cyst." Again, the claim was denied and Mitchell appealed once more, this time stating in his written request for a hearing: "I am totally disabled and unable to engage in gainful employment due to being an amputee, my right leg from the knee down. This disability enables me [sic] from any type of prolonged standing or ambulation."

At a hearing on the matter in July 1995 before Administrative Law Judge Thomas P. Dorsey, in response to the question, "Why can't you work now?", Mitchell testified, "I'm not sure I can get anything where I could just sit for the entire time I'd be working." Mitchell further testified that he could stand for only five minutes at a time and that he could not carry any weight. Finally, Mitchell stated that he was in constant pain when he wore his prosthesis.

In a decision dated August 4, 1995, Judge Dorsey accepted Mitchell's representations and determined that he was disabled within the meaning of the Social Security Act, had been disabled since November 10, 1993, and would continue to be unable to work at least through December 31, 1998. The Social Security Administration thereafter began to pay Mitchell disability benefits.

Meanwhile, in November 1994, Peter M. Brenner, Sr., the Superintendent of Schools in Washingtonville, had informed Mitchell that he would recommend that the School District terminate Mitchell's employment "in light of [his] inability to perform the duties of [his] position for in excess of one year's time." Mitchell responded by sending to Superintendent Brenner a letter from Dr. Kulak, addressed "To Whom It May Concern," requesting that "due to his above knee amputation and the need for use of a prosthesis ... [Mitchell] ... be retrained for a job that is more sedentary...." Mitchell also informed Brenner that the School District should consider his response "a request for a 'reasonable accommodation' as defined by the American Disabilities Act [sic]." Mitchell stated that Dr. Kulak's letter was "not a work release note. It is an order to secure sedentary employment and to be retrained if necessary." Mitchell advised, however, that "if the position of Head Custodian could be restructured to sedentary duties, my return [to work] may be possible."

On December 21, 1994, the School District informed Mitchell that it had terminated his employment.

Mitchell commenced this action on March 19, 1996, alleging that the School District violated the ADA by failing to provide him with a reasonable accommodation in light of his disability.

In connection with the present action, Mitchell testified at deposition that as of November 1994, after he was fitted with a new prosthesis, he could in fact remain on his feet for four hours a day, could tour the school building, and that he could walk 50 to 75 feet with his prosthesis without stopping and then only have to rest for a minute before continuing. Mitchell further testified that by June 1995, he could stand and walk for five hours a day. Mitchell's vocational expert, Edmund

Provder, a certified rehabilitation counselor who examined Mitchell in November, 1996, similarly testified that Mitchell was able to perform the job of Head Custodian once he had received the new prosthesis in 1994.

Mitchell also asserts in this action that as of December, 1994, the School District should have accommodated his disability by restructuring his duties and reassigning the physical duties of the work to other custodians, transferring him to a smaller school within the School District, specifically the Round Hill School, retraining him for a more sedentary job such as courier or bus dispatcher, or granting him an extended leave of absence.

In its opinion and order of January 29, 1998, the district court granted the School District's motion for summary judgment, dismissing Mitchell's ADA claim. The district court determined that because of Mitchell's earlier statements to the Workers' Compensation Board and the Social Security Administration that he was "totally disabled," unable to work, unable to stand, unable to walk, and needed a job where he would be seated, Mitchell was judicially estopped from arguing for purposes of this ADA action that he was capable of doing work in other than a sedentary position. In light of its application of judicial estoppel, the district court held that "the ADA does not require the [School] District to restructure the Head Custodian position to a sedentary one" and that the "accommodations" suggested by Mitchell are unreasonable. As such, the court determined that Mitchell could not show that, restricted to a sedentary position, he was otherwise qualified to perform the essential functions of the position of Head Custodian with a reasonable accommodation, an element of his ADA claim. Mitchell had therefore failed to make out a prima facie case of discrimination.

The district court entered judgment in favor of the School District on February 2, 1998 and Mitchell now appeals.

## II. Discussion

We review the district court's grant of summary judgment *de novo*. *See Lowrance v. Achtyl*, 20 F.3d 529, 534 (2d Cir. 1994). Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law. A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (quoting and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In reviewing a grant of summary judgment we resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir.1998).

### 1. The Americans with Disabilities Act

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, prohibits covered employers from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In order to make out a prima facie case under the ADA, Mitchell was required to show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the School District had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position sought; and (4) that the School District refused to make such accommodations. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). An employer can defeat a prima facie claim if it shows (1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue. *See Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.1995).

The parties do not dispute that Mitchell has a disability as defined by the ADA or that the School District had notice of his disability. At issue is whether Mitchell was "otherwise qualified" for the job of Head Custodian—whether, in other words, he was able to perform the essential functions of that job, either with or without accommodation.

For reasons we explain below, we agree with the district court that because Mitchell is estopped from claiming that he could function in other than a sedentary position, he is unable to establish that with a reasonable accommodation he could perform the essential functions of Head Custodian.

2. Judicial Estoppel

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). The purposes of the doctrine are to "preserve the

sanctity of the oath" and to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir.1997) (internal quotation marks omitted). A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, *see Bates*, 997 F.2d at 1038, such as by rendering a favorable judgment, *see Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997).[2]

The prior inconsistent assertion need not be made to a court of law: statements to administrative agencies, such as to the Social Security Administration in applying for disability benefits, may also give rise to judicial estoppel. *See Safelite Glass*, 128 F.3d at 72.

> To rule otherwise might leave the implication that someone who feels himself in need of further income is free to misrepresent important information to the Social Security Administration. Ascertaining the truth is as important in an administrative inquiry as in judicial proceedings. A growing number of disputes are adjudicated before administrative agencies and tribunals, and those proceedings often form the factual record for later appeals to a judicial court. Moreover, Social Security disability determinations are, in essence, adjudicative.

*Id.* (citation omitted).

Clarifying the reach of judicial estoppel in this context, the Supreme Court has held that the pursuit and receipt of Social Security disability benefits, without more, neither estops the recipient from pursuing an ADA claim nor creates any special presumption against the recipient showing, for purposes of an ADA action, that with rea-

2. We have recognized that judicial estoppel does not apply when the first statement resulted from "a good faith mistake or an unintentional error." *Safelite Glass,* 128 F.3d at 73 (citations omitted).

sonable accommodation he or she could perform the essential functions of the job. *See Cleveland v. Policy Management Sys. Corp.*, —— U.S. ——, ——, 119 S.Ct. 1597, 1599–1600, 143 L.Ed.2d 966 (1999). The Court reasoned that in light of the different purposes and tests of the two statutory schemes, the statement that "I am too disabled to work" made in obtaining social security benefits does not inherently conflict with a later claim under the ADA that "I am not too disabled to work." *Cleveland,* —— U.S. at ——, 119 S.Ct. at 1602 (internal quotation marks omitted). Nonetheless, the Court also held that "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Cleveland,* —— U.S. at ——, 119 S.Ct. at 1600.

■ Mitchell argues that, contrary to these principles, in its application of judicial estoppel the district court effectively imposed a *per se* rule preventing an SSDI recipient who claims an inability to work from later asserting under the ADA that he or she is able to work. We disagree. The district court did not hold that Mitchell was estopped from arguing that he was able to work with a reasonable accommodation once he asserted, for purposes of obtaining workers' compensation and social security benefits, that he was too disabled to work. On the contrary, the lower court specifically declined to apply any such categorical rule and held Mitchell was estopped from asserting, as a factual matter, that he was capable of performing work in other than a sedentary position. Such an application of judicial estoppel is consistent with *Cleveland.* The Supreme Court emphasized that the case before it did not "involve directly conflicting statements about purely factual matters, such as ... 'I can/cannot raise my arm above

my head[,]' " and indeed that the decision "leaves the law related to ... purely factual ... conflict[s] where [the Court] found it." *Cleveland,* —— U.S. at ——, 119 S.Ct. at 1601–02. Therefore, if the requirements for judicial estoppel are otherwise met, Mitchell may be prevented from claiming, as a factual matter, that he could stand and walk at work on the basis of prior factual assertions to the contrary.

■ Turning to those requirements, we conclude that the district court correctly held that Mitchell was estopped from asserting in the present action that he was capable of performing work that required him to stand or walk. First, it is plain that Mitchell "argued an inconsistent position in a prior proceeding," *Bates,* 997 F.2d at 1038. Mitchell's prior statements, made in 1994, 1995 and 1996 to the Workers' Compensation Board and the Social Security Administration, that he was incapable of standing for any length of time or of walking and that he required work he could perform seated, clearly contradict Mitchell's position in this litigation that as of late 1994 he was able to stand and walk for a substantial portion of the work day. Second, Mitchell's earlier inconsistent statements were "adopted" by these tribunals, *see id.*, with a result favorable to Mitchell: an award of benefits. In his August 1995 decision finding that Mitchell was unable to use his prosthesis and so was "disabled" within the meaning of the Social Security Act and entitled to benefits, Administrative Law Judge Dorsey specifically credited Mitchell's testimony that he was unable to stand. Similarly, in awarding Mitchell benefits in October 1996, Workers' Compensation Judge Paksarian also found, based on the testimony and medical reports that Mitchell presented, that Mitchell "remained under permanent restriction to a sedentary job." Since Mitchell's earlier assertions as to his inability to walk or stand were accepted by these prior administrative tribunals, resulting in a determination in his favor, judicial estoppel prevents Mitchell from

advancing, for purposes of this litigation, the contrary position.

### 3. Essential Functions of Head Custodian

■ We also agree with the district court that, once estopped from arguing he could walk and stand and therefore bound to the assertion that he could only do sedentary work, Mitchell could not show that he could perform the essential functions of Head Custodian with a reasonable accommodation. He therefore failed to make out a claim under the ADA.

The term "essential functions," which is not defined in the ADA itself, is defined in ADA regulations promulgated by the Equal Employment Opportunity Commission generally to mean the "fundamental" duties of the position in question, but not functions that are merely "marginal," 29 C.F.R. § 1630.2(n)(1) (1999).[3]

Not surprisingly, the parties dispute which of the duties of Head Custodian comprise its "essential functions" under this definition. The School District asserts that all of the "typical duties" in the job classification specification are essential; Mitchell emphasizes that the Head Custodian position also involves supervisory duties and he argues that fewer of the physical duties of the job are "essential" at the smaller Round Hill School, to which he claims he could be reassigned.

Drawing, as we must for purposes of summary judgment, all factual inferences in Mitchell's favor, it nonetheless remains clear that once estopped from claiming he could work at all in other than a sedentary position, Mitchell remains unable to show that he could perform the essential functions of the Head Custodian job with a reasonable accommodation. Although Mitchell argues that a reasonable accommodation in light of his disability would be to restructure the Head Custodian position at Washingtonville High School to "more sedentary" duties or to assign him to a school with fewer physical demands (i.e., the Round Hill School),[4] he does not claim that he could perform the essential functions of a Head Custodian position at either school if he were restricted *entirely* to sedentary duties. Indeed, Mitchell concurs that, aside from supervising others, most of the duties of Head Custodian—including inspecting certain areas of the school, unloading trucks, moving and storing materials such as furniture and 55–gallon drums, scrubbing, buffing and hand-

---

**3.** The regulations also provide illustrations of the reasons that a given function may be found to be "essential" to the position and give examples of evidence that may be considered in making that finding:

Essential functions-

(1) *In general.* The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

(i) The function may be essential because the reason the position exists is to perform that function;

(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n) (1999).

**4.** Mitchell admits that the Head Custodian position at the Round Hill School, to which he claims he could have been assigned, was in fact occupied through August 1, 1995.

mopping floors, cleaning windows, dusting, vacuuming and dust mopping, hauling garbage bags, shoveling snow and using a snow blower, cleaning lavatories, changing light fixtures, repairing walls and gym bleachers, and certain grounds-keeping activities such as mowing lawns—he could not perform, or not perform completely, from a seated position; they required him to be able to stand and walk on his prosthesis.

We further agree with the district court that the School District was not required under the ADA to retrain and assign Mitchell to an entirely different position, such as courier or bus dispatcher—positions which Mitchell agrees were not available at the time. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("Employers .... are not required to find another job for an employee who is not qualified for the job he or she was doing, [even though] they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies."); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384–85 (2d Cir.1996) (employer "did not have an affirmative duty to provide [disabled employee] with a job for which she was qualified"); *Bates,* 997 F.2d at 1035 ("reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position"). Nor, especially in light of the assertions to which Mitchell was bound by estoppel, that he was totally disabled—unable to work, unable to stand, unable to walk—and the absence of any indication from him in his correspondence with the School Board that, aside from restructuring the position to sedentary duties, he expected to be able to return, was the School Board required to grant Mitchell an indefinite leave of absence. *See, e.g., Walton v. Mental Health Ass'n,* 168 F.3d 661, 671 (3d Cir.1999); *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1004 (7th Cir.1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759–60 (5th Cir.1996); *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996); *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995).

Since Mitchell is estopped from claiming he could stand and walk at work, and he is unable to show that with a reasonable accommodation he could perform the essential functions of the Head Custodian position from a sedentary position, he fails to make out a prima facie claim of discrimination under the ADA. Summary judgment in favor of the School District was, therefore, properly granted.

We have examined the other issues raised by Mitchell and found them to be without merit.

### III. Conclusion

The judgment of the District Court is affirmed.