**Gerald NEEDLE, Plaintiff,**

v.

**ALLING & CORY, INC., Defendant.**

**No. 98–CV–6182L.**

United States District Court,
W.D. New York.

March 28, 2000.

William J. Sedor, Rochester, NY, for Gerald Needle, plaintiff.

Sharon P. Stiller, Underberg & Kessler, Rochester, NY, for Alling and Cory, Inc., defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

In his complaint in this employment discrimination action, Gerald Needle ("Needle" or "plaintiff"), a former employee of defendant Alling and Cory, Inc. ("Alling & Cory" or "defendant"), alleges disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") ("First Count"), and intentional infliction of emotional distress ("Second Count.")[1]. Alling & Cory has counterclaimed for the reimbursement of certain COBRA benefits it provided Needle. Presently before the Court are Alling & Cory's motions for summary judgment, under FED.R.CIV.P. 56, and sanctions, under FED.R.CIV.P. 11.

### Factual Background

Plaintiff began his employment with Alling & Cory in 1976. For over twenty years, he worked in various positions, most recently as a Level II Warehouse Associate in the Receiving Department.

In June 1996, plaintiff took a disability leave due to complications related to his diabetes, from which he had long suffered. After the amputation of three toes, he returned to work in December 1996. Shortly thereafter, he again went out on disability in February 1997, and the remaining toes on his right foot were amputated. By May 1997, plaintiff's physicians advised defendant that plaintiff would be permanently partially disabled, and that he would be restricted in his ability to walk, stand, lift, and squat.

Unfortunately, plaintiff's former position required heavy lifting and other physical effort. The applicable job description provided: "Moderate physical effort required. May occasionally need heavy exertion [*sic*] for lifting." His job also required walking, standing, and squatting. Alling & Cory considered such physical exertion essential functions of the job[2], and even plaintiff conceded during his deposition that a range of physical effort was required to perform his job.

---

1. On September 30, 1999, I granted defendant's motion for summary judgment on the Second Count and dismissed that count.

2. Evidence of whether a particular function is essential includes, but is not limited to:
 (i) The employer's judgment as to which functions are essential;
 (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
 (iii) The amount of time spent on the job performing the function;
 (iv) The consequences of not requiring the incumbent to perform the function;
 (v) The terms of a collective bargaining agreement;
 (vi) The work experience of past incumbents in the job; and/or
 (vii) The current work experience of incumbents in similar jobs.
 29 C.F.R. § 1630.2(n) (1999).

Margaret Supinski, Alling & Cory's Vice–President of Human Resources, discussed the matter with plaintiff twice in May 1997, and sent him a letter, dated May 14, 1997, requesting any information he had about his ability to perform his job. Plaintiff never responded to Ms. Supinski's letter to him. Although plaintiff claims to have spoken to Merit Wilkinson, Alling & Cory's General Manager in Rochester, about the matter, plaintiff admitted in his deposition that he told both Supinski and Wilkinson that he could not perform all of the functions of his job. Ms. Supinki testified that plaintiff stated in their second conversation that month that he had no other skills which defendant should consider in attempting to locate another position for him, and Ms. Supinski's notes of her conversation support that testimony. In fact, plaintiff never applied for any vacant positions, and never requested reassignment to any vacant position. Alling & Cory maintains that it searched for a vacant position consistent with plaintiff's skills, but none existed at that time. Plaintiff admitted in his deposition that he was unable to identify any vacant positions in May 1997 for which he was qualified.

The record further reflects that in his 1997 application for vocational services from the New York Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"), plaintiff stated that he left Alling & Cory because he: "… could no longer do job." Because plaintiff never requested any accommodation that would have allowed him to perform the essential functions of his position as a warehouse associate, and because no appropriate vacancies existed, plaintiff was terminated in May 1997. An EEOC charge, and this action followed.

### Contentions of the Parties

In support of its motion for summary judgment, defendant contends that plaintiff cannot establish a *prima facie* case of disability discrimination because: (1) plaintiff is not a qualified individual with a disability under the ADA; (2) there was no accommodation which would enable him to perform the essential functions of his job; and (3) no vacant position consistent with his skills existed to which he could have been reassigned. Defendant also asserts that plaintiff is estopped from claiming that he could have been accommodated because of the prior representations he made to his employer and to others that he was disabled and unable to perform his job. Lastly, Alling & Cory moves for sanctions under Rule 11, asserting that this is a frivolous suit.

Plaintiff maintains that there are questions of fact that preclude summary judgment. He asserts that: (1) he could have performed some aspects of his former position; (2) he could have been reassigned to the Converting Department, or retrained for a computer data entry position; and (3) he has now discovered that there was a "mechanical device" that would have assisted him in performing the functions of his job. While plaintiff has failed to file any formal cross-motion, he does request in his memorandum of law that Alling & Cory's counterclaim for its payment of CO-BRA benefits be dismissed.

### DISCUSSION

#### A. Summary Judgment—General Standards

On a motion for summary judgment, "a court's responsibility is to assess whether there are any factual issues to be tried." *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus.*

Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, it "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting FED.R.CIV.P. 56(e)). For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *id., cited in, Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996).

## B. Plaintiff's Disability Discrimination Claim

Courts evaluate disparate treatment employment discrimination claims using the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). The *McDonnell Douglas* burden-shifting analysis is also utilized in analyzing claims based on the ADA. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998); *Glidden v.*

County of Monroe, 950 F.Supp. 73, 75 (W.D.N.Y.1997).

■ In order to establish a *prima facie* case of disability discrimination, plaintiff must show that: (1) he is "disabled" within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job; and (3) he suffered adverse employment action because of his disability. *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir.1996); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–870 (2d Cir.1998); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y.1996).

### 1. Disability Under the ADA

To survive a summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that he is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)–(C).

The Equal Employment Opportunity Commission ("EEOC") has defined a "physical impairment" under the statute as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).[3]

In the instant case, plaintiff's difficulties stem from complications of his diabetes.

---

**3.** Although "[t]he Supreme Court has recently drawn into question the degree of deference due to the EEOC's interpretations of the term 'disability' .... [n]onetheless, until a more definite pronouncement is forthcoming, it re-

mains the law of this Circuit that [the Second Circuit] will give weight to the EEOC's interpretations." *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir.1999).

A physical impairment, however, standing alone, does not necessarily constitute a disability under the ADA. *Hazeldine v. Beverage Media, Ltd.,* 954 F.Supp. 697, 703 (S.D.N.Y.1997). In fact, an impairment "may affect an individual's life without becoming disabling." *Id.* at 703. Therefore, plaintiff must demonstrate that the impairment "substantially limits" one or more "major life activities." Defendant claims that plaintiff cannot meet this definition.

The EEOC has defined "substantially limits" to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC defines "major life activities" as "functions such as caring for oneself, performing manual tasks, *walking,* seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis supplied); *Heyman, v. Queens Village Committee For Mental Health,* 198 F.3d 68, 72 (2d Cir.1999).

Plaintiff has not submitted any affidavit or testimony of any medical expert to support the notion that his condition substantially limited any "major life activities." Indeed, plaintiff has neither alleged in his complaint nor contended in response to the instant motions that his condition substantially limited any major life activities. However, his diabetes, which has led to the amputation of all of his toes on his right foot, the surgical removal of his left heel, and vision problems, has caused his physician to impose permanent restrictions on plaintiff's walking, and has thus impacted plaintiff's ability to walk. Given that the EEOC regards walking as a major life activity, and that an anatomical loss affecting the musculoskeletal system may be deemed a physical impairment, and viewing the facts in the light most favorable to plaintiff, I find for purposes of this motion that plaintiff was disabled within the meaning of the ADA.

### 2. *Qualification to Perform Essential Functions of Job*

Even if plaintiff is deemed to be disabled under the ADA, he must still show that he is otherwise qualified to perform the essential functions of his job, and that he suffered adverse employment action because of his disability. Therefore, a critical component of an ADA claim is proof that the plaintiff is "otherwise qualified" for a particular job. *Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 137 (2d Cir.1995). To be "otherwise qualified," the plaintiff must be "able to perform the essential functions of the job, either with or without a reasonable accommodation." *Id.* at 135 (citing *School Board of Nassau County v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) and *Gilbert v. Frank,* 949 F.2d 637, 641–42 (2d Cir.1991)). The term "essential functions," which is not defined in the ADA itself, is defined by the EEOC as constituting "the fundamental job duties" of the employment position in question, but not functions that are merely "marginal." 29 C.F.R. § 1630.2(n)(1) (1999).

On the issue of plaintiff's ability to perform the essential functions of his former job, both Needle and Alling & Cory agree. Plaintiff could not perform his prior job. Indeed, plaintiff candidly admitted several times during his deposition that he could not perform the essential functions of his job. *See* Needle Dep., p. 163 ("I wasn't able to perform the essential functions of my job"); *id.,* pp. 151–152 ("... I couldn't perform a complete job as Alling and Cory described it. I could do parts of the job, but not the complete job because of the walking restrictions"); *id.,* p. 207 ("I told [Margaret Supinski] I could perform most of the essential functions of my duties, not

all of them"); *see id.*, p. 169. Similarly, in his 1997 application for vocational services from VESID, plaintiff said that he left Alling & Cory "because [he] could no longer do job."

▮ Notwithstanding his prior testimony and the other documentary evidence, however, plaintiff now maintains to the contrary that he "could have performed his job despite amputations." Plaintiff's Statement of Disputed Facts, Dkt. # 15, para. 5. This directly contradicts his prior deposition testimony, and is insufficient to create a question of fact on this issue. *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony") (quoting *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614 (2d Cir.1996)); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) ("[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment"). Moreover, plaintiff's responding affidavit suggests what plaintiff claimed before the lawsuit, that he could not perform his job. *See* Needle Affidavit, Dkt. # 14, paras. 10–11 ("During the latter part of 1996, and early 1997[4], despite having amputations, I was still capable of performing the essential duties of a warehouse worker. However, after an onset of complications, I required more amputations, and as a result, could only stand no longer than 1–2 hours per day"). I believe that the record is clear that even plaintiff conceded his inability to perform the essential functions of his job. Accordingly, plaintiff has failed to establish that he was "otherwise qualified" for his job.[5]

In spite of this, Needle insists that Alling & Cory should have made a reasonable accommodation by giving him other work, the exact nature of which he does not specify. In fact, plaintiff contends that he "brought this action because ... Alling & Cory has not made any accommodation for him per his request, i.e. [*sic*] *change job positions.*" Plaintiff's Memorandum, p. 5 (emphasis added). In support, plaintiff has suggested "job-splitting," transfer to the Converting Department, or retraining for a more sedentary job, such as a computer data entry position.

▮ Plaintiff first appears to suggest that the warehouse associate position should have been "split" and the physical duties reassigned to other staff. This, however, would require the elimination of essential functions of the warehouse associate position. Such a restructuring of the warehouse associate position to accommodate plaintiff would have required defendant to revamp the position completely, stripping it of most of the physical labor and many of the duties that are contemplated by the job. The ADA does not require such measures. *Mitchell v. Washingtonville Cent. School Dist.*, 992 F.Supp. 395, 410 (S.D.N.Y.), *aff'd*, 190 F.3d 1 (2d Cir.1999); *see also Borkowski*, 63 F.3d at 140 ("we have held ... that individuals whose physical condition precludes them from engaging in heavy lifting, and who seek jobs for which such lifting is shown to be an essential function, need not be accommodated by shifting responsibility for the lifting to other individuals").

▮ Plaintiff next suggests transfer to the Converting Department, where, in plaintiff's view, the duties would be less demanding than those in the Receiving Department. First, there were no vacancies in that department in May 1997. In this Circuit, in order to recover under the ADA for a failure to reasonably accommo-

**4.** Presumably, plaintiff is referring to the months in 1997 prior to his termination in May.

**5.** It is simply too late for plaintiff to assert now that at some unidentified time after his termination he became aware of a device that may have assisted him to perform some of the essential functions of his job. *See Adams v. Rochester General Hosp.*, 977 F.Supp. 226, 235 (W.D.N.Y.1997).

date by transfer, a plaintiff bears the burden of establishing that a vacancy existed into which he or she might have been transferred, and that he possessed the requisite skills for that position. *Jackan v. New York State Department of Labor,* 205 F.3d 562, 565 (2nd Cir.2000) ("an ADA plaintiff complaining of his employer's failure to provide a reasonable accommodation, bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time he sought transfer"). Plaintiff's unsupported assertion that "[t]here is always work needed [*sic*] to be done in that department" (Plaintiff's Aff., Dkt. # 14, para. 18) does little to help him meet his burden on this issue. Second, defendant submitted the affidavit of Bohdan Laluk, the manager of that department, who maintains that most of the work requires extensive standing and walking, which plaintiff could not do. Finally, while under the ADA, an employer may reassign an employee to a vacant position, the employer is required neither to create a new position for the employee nor to move another employee from a previously held position in order to accommodate the disabled employee. *Smith v. Ameritech,* 129 F.3d 857, 867 (6th Cir.1997); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996); *White v. York Int'l Corp.,* 45 F.3d 357, 362 (10th Cir.1995). Consequently, because the key concern is whether accommodation was available to the individual at the time of termination, *see Dush v. Appleton Electric Co.,* 124 F.3d 957, 964 (8th Cir.1997), defendant was not required to transfer plaintiff to the Converting Department.

▮ A similar analysis applies to plaintiff's suggestion that Alling & Cory retrain him for a more sedentary job, such as a computer data entry position. But as defendant points out, there was no position at the company which only involved data entry. Persons performing those tasks did other things. Moreover, Alling & Cory had no positions involving computer data entry that were available in May 1997, and plaintiff has offered no proof to the contrary. Finally, defendant has no obligation to retrain plaintiff for a position for which he is not qualified. *See Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d at 9; *Quintana v. Sound Distribution Corp.,* 95–CV–309, 1997 WL 40866, *6 (S.D.N.Y. Feb.3, 1997).

▮ Indeed, an employer need not "provide disabled employees with alternative employment when the employee is unable to meet the demands of his present position." *Christopher v. Laidlaw Transit Inc.,* 899 F.Supp. 1224, 1227 (S.D.N.Y. 1995) (citations omitted). There is simply no general duty to transfer a disabled employee unable to perform one job to another available position, absent some showing—not made here—of a contractual right to transfer or an established policy of such transfers. *See Bates v. Long Island R. Co.,* 997 F.2d 1028, 1035 (2d Cir.) ("reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position"), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). As one court aptly noted:

> To construe an employer's obligation to reach as far as this plaintiff suggests [offering a sedentary clerical position to a truck driver with a back problem] would foster a regime of business management by the judiciary instead of management by the duly authorized representatives of the shareholders. By enacting the ADA, Congress did not intend to effect such a sweeping change in the fundamental structure of the American economy. Indeed, 'nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy.'

*Quintana v. Sound Distribution Corp.,* 1997 WL 40866, at *6 (quoting *Wernick,* 91 F.3d at 384). *See also Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d 1, 8–9 (2d Cir.1999); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d at 384–85 (employer "did not have an affirmative

duty to provide [employee] with a job for which she was qualified"); *Parisi v. Coca–Cola Bottling Company of New York,* 995 F.Supp. 298, 303–304 (E.D.N.Y.), *aff'd,* 172 F.3d 38 (2d Cir.1999).

 Defendant also asserts that in light of the representations Needle made that he was unable to perform his job in support of his applications for unemployment benefits, vocational services, and disability benefits, and similar statements he made to his physician, he is now estopped from claiming that Alling & Cory owed him any duty of reasonable accommodation. For this argument, defendant relies on *Mitchell v. Washingtonville Cent. School Dist.,* 992 F.Supp. 395 (S.D.N.Y.), *aff'd.,* 190 F.3d 1 (2d Cir.1999). Following *Mitchell,* however, the Second Circuit has addressed a similar matter in *Parker v. Columbia Pictures Indus.,* 204 F.3d 326 (2d Cir.2000). There, the Circuit determined that while ADA plaintiffs have "wide latitude to overcome apparent conflicts between their SSDI applications and their statements alleging discriminatory discharge, it does not preclude summary judgment in such cases altogether." *Id.,* at 332. In this case, while plaintiff's representations to his physicians and in his applications for administrative assistance certainly conflict with any assertion now that he can perform the essential functions of his former job, they alone are not enough to warrant summary judgment on his claim that he was not afforded a reasonable accommodation. *See id.,* at 333, (plaintiff's "statements on his application for Social Security benefits do not, as a matter of law, preclude him from showing that with reasonable accommodation, he was capable of performing the essential functions of the job in accordance with the ADA"). So, although plaintiff may not be estopped from asserting his claim on the facts of this case, he has failed to satisfy the requirements of establishing any entitlement to an accommodation.

### 3. *Pretext*

In sum, I believe that plaintiff has failed to establish a *prima facie* case. However, even if plaintiff is deemed to have established a *prima facie* case, he has not adequately rebutted the legitimate nondiscriminatory reasons articulated by Alling & Cory for terminating his employment— that plaintiff could not perform his duties as a Level II Warehouse Associate and that there were no vacant positions in May 1997 for which plaintiff was qualified. Even if plaintiff had set forth the necessary elements for a *prima facie* case, he has put forth no credible evidence showing that disability discrimination was more likely than not the real reason that motivated Alling & Cory to terminate him. In other words, plaintiff's explanations are insufficient to establish pretext. *See Duclair v. Runyon,* 166 F.3d 1200 (2d Cir. 1998) (in an unpublished opinion in a Title VII case, the Second Circuit noted that "the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff").

The court is not unsympathetic to the difficult situation plaintiff confronted because of his diabetic condition, and the fact that he underwent amputations and other invasive procedures, and could no longer perform his job. However, trying medical circumstances do not automatically translate into a valid ADA claim. Defendant's motion for summary judgment on plaintiff's disability claim is granted, and the First Count of the complaint is dismissed.

### D. Defendant's Counterclaim

Drawing, as I must for purposes of summary judgment, all factual inferences in plaintiff's favor, I find that defendant has failed to establish entitlement to summary judgment with respect to its counterclaim for $204.26.[6] Moreover, defendant cites no

---

**6.** Although, in its counterclaim, defendant alleges that it demanded that plaintiff return $204.26 (Counterclaim, Dkt.2, para.27), it also alleges that it "has been damaged in the

minimum amount of $408.52 . . . ." *Id.,* para. 30. In its motion papers, defendant appears to limit its counterclaim to $204.26. *See* Reply Affirmation of Sharon Stiller, Dkt. # 19,

legal authority in support of its counterclaim. Therefore, defendant's motion for summary judgment on its counterclaim is denied, and plaintiff's motion to dismiss the counterclaim is granted.

## CONCLUSION

Defendant's motion for summary judgment on the First Count of the complaint (Dkt.# 5) is granted. Defendant's motion for summary judgment on its counterclaim is denied. Plaintiff's complaint and defendant's counterclaim are each dismissed with prejudice. Defendant's motion for sanctions (Dkt.# 24) is denied.

IT IS SO ORDERED.

paras. 5, 6(e) ("the Company should be entitled to summary judgment on its counterclaim in the amount of $204.26").
