**Wanda F. FARRISH Plaintiff,**

v.

**CAROLINA COMMERCIAL HEAT TREATING, INC. Defendant.**

**No. 1:01CV00573.**

United States District Court, M.D. North Carolina.

Sept. 19, 2002.

Nancy Pulliam Quinn, Quinn Law Firm, Grennsboro, NC, for plaintiff.

J. Alexander S. Barrett, Thomas K. Barlow, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Kenneth E. Young, William H. Foster, Nelson Mullins Riley & Scarborough, L.L.P., Greenville, SC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

This case is before the Court on the defendant's motion for summary judgment [Doc. # 16]. For the reasons set forth below, the Defendant's motion is GRANTED.

### I.

The facts in the light most favorable to the plaintiff are as follows. Wanda F. Farrish began her employment with Carolina Commercial Heat Treating, Inc. ("Carolina") on June 9, 1988. At the time of her termination, Ms. Farrish was an inspector at the company. During her employment, Ms. Farrish received Carolina's Employee Handbook and signed an acknowledgment that she was familiar with the contents of the Handbook. Carolina's Employee Handbook included Carolina's No–Fault Attendance Policy. The No–Fault Attendance policy described the procedure and consequences for absence from work. The No–Fault Attendance policy states that excessive absenteeism and/or tardiness will result in disciplinary action based upon the frequency of occurrences. Three occurrences result in a consultation with the employee. After six occurrences, Carolina gives the employee a written warning. After eight occurrences, an employee receives a three-day suspension and a final written warning. An employee is terminated after nine occurrences.

The No–Fault Attendance policy also states that if an employee's cumulative time lost from work substantially reduces the employee's services to the company, the employee may be subject to disciplinary action. In such cases, the management of Carolina will take into account the previous attendance, length of service, nature of absences, extent that they exceed the norm, and prospects for the future.

Ms. Farrish was diagnosed with breast cancer on October 4, 1999. Ms. Farrish applied for and was granted a medical leave of absence under the Family and Medical Leave Act ("FMLA"). The leave

was scheduled from November 1, 1999 to December 27, 1999.

However, Ms. Farrish did not return to work on December 27, 1999. Instead on January 20, 2000, Ms. Farrish submitted a medical note from Dr. Livesay. Dr. Livesay stated that it was "medically necessary" for Ms. Farrish to remain out of work throughout January 2000. The additional leave was requested due to complications with radiation treatment including the development of scar tissue on Ms. Farrish's lungs. On January 11, 2000 Gail Mize, the Human Resources Manager at Carolina, contacted Ms. Farrish. Ms. Mize informed Ms. Farrish that her FMLA leave would expire on January 22, 2000. Ms. Mize also informed Ms. Farrish that Carolina could not extend the FMLA leave, but the company would allow Ms. Farrish to take personal leave from January 23, 2000–January 31, 2000.

Ms. Farrish returned to work on February 1, 2000. Ms. Farrish experienced problems with the air in the plant due to the strong fumes that are a natural byproduct of the heat treating process. Carolina provided Ms. Farrish with a breathing mask. Ms. Farrish's breathing problems were not remedied by the use of a mask. Ms. Farrish stated that she believes no mask could have remedied her problem. On February 3, 2000, Ms. Farrish submitted a note from Dr. Livesay that it was medically necessary for her to be out of work for one week beginning February 3, 2000. Carolina granted Ms. Farrish the additional week of time and did not count the time off as an absence from work under their No–Fault Attendance Policy.

Ms. Farrish was not able to return to work on February 11, 2000. Instead, Ms. Farrish submitted a note from Dr. Joseph Weiss of Moses H. Cone Memorial Hospital. The note stated that Ms. Farrish was under his care and was unable to return to work. Dr. Weiss also stated that she should be able to return to work on February 21, 2000 and work under light duty. On February 21, 2000 Ms. Farrish submitted another medical note from Dr. Weiss that stated she could return to unrestricted work on February 21, 2000. Carolina extended Ms. Farrish's personal leave to cover the additional eighteen days of leave.

Once Ms. Farrish returned to work on February 21, 2000, she asserts that Carolina's management acted differently around her. Ms. Farrish states that the management, John Orshal, Gail Mize, and Tony DeVenny, acted "strangely" and were "harping" on her about returning to work and her work schedule.

However, Carolina adjusted Ms. Farrish's schedule per her request. The schedule allowed Ms. Farrish time in the morning to attend doctors' appointments and support group meetings. Ms. Farrish returned to work full time on February 21, 2000. At that time Ms. Farrish's cancer was considered in remission.

On April 27, 2000, Ms. Farrish was granted two days of leave to care for her ill mother. After her mother's death Ms. Farrish was granted seven additional days of leave. The days of leave were not counted against Ms. Farrish under the No–Fault Attendance Policy.

On May 10, 2000, Ms. Farrish received a second level warning letter from Carolina for poor attendance. The warning stated that Ms. Farrish currently had six and three-fourths absences and that eight absences would result in a three-day suspension. Prior to her diagnosis with breast cancer, Ms. Farrish had received a first level warning from Carolina. No approved leave days were counted against Ms. Farrish under the No–Fault Attendance Policy. On May 23, 2002, Ms. Farrish received a third written warning. As a result of the warning, Carolina suspended Ms. Farrish for three days. The warning

also stated that another absence, for a total of nine absences, would result in discharge from her position.

On May 28, 2000, Ms. Farrish left work early without providing notice to management. As a result, Carolina cited Ms. Farrish with her ninth absence. Ms. Farrish submitted a medical excuse from Guildford Psychiatric Institute on June 2, 2000. The medical excuse stated that she needed to be on medical leave for the next two weeks from June 1, 2000 thru June 16, 2000. Ms. Farrish stated that she was suicidal at this time. Ms. Farrish was not hospitalized during this time, but was attending outpatient therapy in the morning. On June 7, 2000, Ms. Farrish contacted Carolina and agreed to meet with company representatives. At that meeting Carolina dismissed Ms. Farrish.

## II.

Summary judgment is only proper when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299; *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F.Supp.2d 785, 791 (E.D.Va.2001). The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This evidence must be properly authenticated pursuant to Rule 56(e). *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993).

## III.

■ To establish a claim of wrongful discharge under the Americans with Disability Act ("ADA"), a plaintiff must show that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 702 (4th Cir.2001).

The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of an individual. 42 U.S.C. § 12102(2)(A). Substantially limits means "[s]ignficiantly restricted as to the condition, manner or duration under which an individual can preform a particular life activity as compared to the condition, manner, or duration under which the person in the average population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Examples of major life activities include performing manual tasks, walking, seeing, and hearing. *Id.*

However, the inability to perform a single job is not considered a substantial limitation on a life activity. *Rhoads v. FDIC*, 257 F.3d 373 (4th Cir.2001). In *Rhoads*, the Fourth Circuit held that an employee, who suffered from asthma and migraines, was not substantially limited in her ability to work and therefore was not considered

disabled under the ADA. *Id.* at 388. The plaintiff was unable to function only in one smoke-filled office, not all offices. *Id.*

In this case, the Plaintiff argues that she is disabled under the ADA because she had both breast cancer and breathing problems. Cancer has been recognized as a disability under the ADA. 29 C.F.R. § 1630.2. Courts have also recognized breathing difficulties and chemical sensitivity as disabilities. *Tangires v. Johns Hopkins Hosp.,* 79 F.Supp.2nd 587 (D.Md. 2000), *aff'm* 230 F.3d 1354, 2000 WL 1350647 (4th Cir.2000).

However, the Plaintiff's cancer was in remission at the time of her termination. In addition, while the Plaintiff does experience breathing problems and chemical sensitivity she has failed to show that those problems substantially limit a major life activity. Similar to the facts in *Rhoads,* while the Plaintiff may not be able to work at Carolina, she is not excluded from working somewhere else. In fact, the Plaintiff's doctor recommended that she seek employment outside of her current field to improve her condition.

## IV.

■ The ADA provides protection for individuals, who while they are not disabled under the definition provided by the ADA, are regarded as disabled by their employer. *Haulbrook,* 252 F.3d at 702–3. A plaintiff is "regarded as disabled" under the ADA if either (1) a covered entity mistakenly believes that the plaintiff has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non limiting impairment substantially limits one or more major life activities. *Id.* at 703. The fact that a covered entity employer is aware of an employee's impairment, without more, is insufficient to demonstrate that the em-

ployer regarded the employee as disabled. *Id.*

The Plaintiff fails to show that the Defendant regarded her as disabled. The Plaintiff provided a medical note from her doctor on February 21, 2000 that she was released for unrestricted work. The Defendant returned the Plaintiff to a normal schedule and normal job duties.

Although the Plaintiff used a breathing mask, there is no evidence that as a result the Defendant regarded her as disabled. The Defendant knew of the impairment, but did not treat it as a disability. Therefore, the Plaintiff fails to present any evidence that the Defendant regarded her as disabled.

## V.

■ Even if the plaintiff could prove that she had a disability as defined by the ADA, she fails to show that she was qualified for her position. Under the ADA a person must be "qualified" for her position. *Tyndall v. National Educ. Ctrs., Inc. of Calif.,* 31 F.3d 209, 212 (4th Cir. 1994). The ADA defines a qualified person as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires to hold. *Id.* (citing 42 U.S.C. § 12111(8)).

The Fourth Circuit held that an employee who cannot meet the attendance requirements of a job is not considered a qualified individual covered under the ADA. *Id.* at 213. An employee who cannot come to work cannot fulfill any, much less the essential, functions of her job. *Id.*

In *Tyndall,* the plaintiff suffered from lupus erthematous, an autoimmune disorder. *Id.* at 212–3. As a result of her disease the plaintiff missed more than forty days of work including the crucial be-

ginning of the instructional cycle. As a result, the Fourth Circuit held that the plaintiff was not qualified for her job and therefore was not protected under the ADA.

Similarly, the Plaintiff in this case missed an extensive amount of work. The Plaintiff cannot perform her job from home. She is the only inspector on duty during her shifts, so her position is crucial.

The Defendant counseled and ultimately disciplined the Plaintiff because of her excessive absences. The Plaintiff received notice from her employer on May 10, 2000 that she had six and three-fourths absences and that an eighth absence would result in suspension. On May 23, 2000, the Plaintiff reached her eighth absence and was suspended. The Defendant warned the Plaintiff that a ninth absence would result in termination. On May 28, 2000, the Defendant cited the Plaintiff with her ninth absence. After meeting with the Defendant, the Plaintiff was terminated.

The Plaintiff could not meet the attendance requirements of her job. Therefore, the Plaintiff was not qualified for her position and is not protected under the ADA.

### VI.

■ Even if the Plaintiff were able to provide a genuine issue of material fact as to all of her other claims, she cannot show that the Defendant failed to provide reasonable accommodations. A failure to accommodate claim under the ADA requires that the plaintiff establish: (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Rhoads v. Federal Deposit Insurance Corp.*, 257 F.3d 373, 387 (4th Cir.2001)

(citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2nd Cir.1999)).

The law does not require employers to provide the accommodation that the employee be allowed to work only when her illness permits. *Walders v. Garrett*, 765 F.Supp. 303, 313 (E.D.Va.1991). If an accommodation causes undue hardship, the agency is not required to provide the accommodation. 29 C.F.R. § 1613.704(a).

In this case, the Defendant provided the Plaintiff with more leave than required under the FMLA. The Defendant provided the Plaintiff with a breathing mask. The mask did not help with her breathing problems, but the Plaintiff admits there are no masks that would have been able to screen out the smoke and fumes. In fact, the Plaintiff stated that there are no accommodations in her present position that the Defendant could have provided that would have enabled her to perform her job. The Defendant did not make further requests for accommodation. Therefore, Defendant has not denied the Plaintiff any reasonable accommodations.

### VII.

■ Finally, the Plaintiff charges the Defendant with the tort of intentional infliction of emotional distress. In North Carolina, the tort of intentional infliction of emotional distress ("IIED") consists of three elements: (1) Extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (N.C.1981). Negligent infliction of emotional distress ("NIED") consists of three different elements: (1) The defendant negligently engaged in conduct, (2) It was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress or mental anguish, and (3) the conduct did in fact cause the plaintiff severe emotional

distress. *Johnson v. Ruark Obstetrics & Gynecology Associates,* P.A., 327 N.C. 283, 395 S.E.2d 85 (N.C.1990). Neither IIED nor NIED requires physical impact or injury. *Dickens,* 302 N.C. at 448, 276 S.E.2d 325; *Johnson,* 327 N.C. at 304, 395 S.E.2d 85.

The Plaintiff claims only that the Defendant's management acted strangely toward her and questioned her about her work schedule. This evidence does not rise to the level required to support a claim of either IIED or NIED.

### VIII.

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.